**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 1:26-cv-00560-RMR

HUGO HERNANDEZ CEREN,

    Petitioner,

v.

KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security,
PAMELA BONDI, in her official capacity as Attorney General of the United States,
TODD LYONS, in his official capacity as Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement,
ROBERT HAGAN, in his official capacity as Field Office Director of the Denver Field Office of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations,
JUAN BALTAZAR, in his official capacity as Warden of the Aurora Contract Detention Center,

    Respondents.

---

**ORDER**

---

Pending before the Court is Petitioner Hugo Hernandez Ceren's Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. 1. Respondents filed a Response to the Petition, ECF No. 14. For the reasons stated below, the Petition, ECF No. 1, is GRANTED.

## I.    BACKGROUND

Petitioner is a citizen of El Salvador. ECF No. 1 ¶ 23. He entered the United States as a lawful permanent resident in 2005. *Id.* In 2009, the Department of Homeland Security

("DHS") initiated removal proceedings against Petitioner based on a conviction under California Penal Code § 646.9. *Id.* ¶ 24. An Immigration Judge sustained the charges, terminated Petitioner's lawful permanent resident status, and ordered his removal. *Id.* Petitioner's appeal was dismissed, and he was removed on May 28, 2012. *Id.*; ECF No. 14 at 2. On November 29, 2012, Petitioner illegally re-entered the United States and U.S. Customs and Border Protection ("CPB") agents reinstated the order of removal under 8 U.S.C. § 1231(a)(5). ECF No. 14 at 3. Petitioner was again removed from the United States on September 3, 2013. *Id.* On December 13, 2013, Petitioner illegally re-entered the United States yet again, and CBP reinstated the order of removal under 8 U.S.C. § 1231(a)(5). *Id.* Petitioner was removed on July 15, 2015. *Id.*

In 2017, Petitioner returned to the United States and sought asylum. ECF No. 1 ¶ 25. His application was denied, and his order became administratively final in 2018. *Id.* The Immigration Judge ordered Petitioner removed to El Salvador or, in the alternative, to Mexico. ECF No. 14 at 3. His petition for judicial review in the Ninth Circuit was denied on or about March 5, 2020. ECF No. 1 ¶ 25. Petitioner filed a motion to reopen his removal proceedings and reinstate his status as a lawful permanent resident on February 21, 2023. *Id.* ¶ 27. This motion remains pending. *Id.*

In January 2020, while detained under 8 U.S.C. § 1231, Petitioner filed a habeas petition challenging the legality of his detention. *Id.* ¶ 31. ICE released Petitioner on December 11, 2020 under an Order of Supervision ("OSUP"), and his habeas petition was dismissed as moot on January 29, 2021. *Id.*

Additionally, Petitioner is a named plaintiff in *Alejandro Menocal et al. v. The GEO Group, Inc.*, No. 1:14-cv-02887 (D. Colo.), a class action against The GEO Group, Inc. ("GEO"), the private contractor that operates the Aurora facility under contract with ICE. *Id.* ¶ 28. An order Granting Emergency Motion to Modify Writ of Habeas Corpus Ad Testificandum for Trial was entered on December 8, 2025 (ECF No. 436) and a Writ of Habeas Corpus Ad Testificandum was issued on the same date (ECF No. 437). Thus, pursuant to Judge Kane's Order, Petitioner cannot be removed until after the trial has concluded or his testimony is no longer needed.

On November 24, 2025, Petitioner appeared at a local ICE office at ICE's request. *Id.* ¶ 33. Without prior notice or a warrant, ICE revoked Petitioner's OSUP and detained him. *Id.* He was not afforded an informal interview or given written reasons for revocation. *Id.* No individualized finding of changed circumstances was provided. *Id.* Petitioner was transported across multiple facilities and ultimately confined in Aurora, Colorado, where he remains. *Id.* Petitioner had a pending U visa application at the time of his arrest, although USCIS had not issued receipt notices. *Id.* ¶ 34.

On February 7, 2026, ICE conducted a Post Order Custody Review pursuant to 8 C.F.R. § 241.4. ECF No. 8 at 5. ICE determined that Petitioner failed to demonstrate that he will not pose a danger to the community or pose a significant risk of flight pending removal from the United States. *Id.* ICE was in receipt of the necessary travel documents to effectuate Petitioner's removal and determined there is a significant likelihood of removal in the reasonably foreseeably future to continue to detain Petitioner. *Id.* On February 24, 2026, ICE served Petitioner with a Notice of Revocation of Release. *Id.*

Petitioner requests immediate release from custody or, in the alternative, a constitutionally adequate individualized custody determination at which the government bears the burden to justify continued detention. ECF No. 1 at 22.

## II.     LEGAL STANDARD

### A.     Habeas Corpus Relief

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus proceedings under 28 U.S.C. § 2241 "remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Singh v. Choate*, No. 23-cv-02069-CNS, 2024 WL 309747, at *1 (D. Colo. Jan. 26, 2024) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)); *see also Hernandez-Ceren v. Wolf*, No. 20-cv-01628-RM, 2020 WL 3036074, at *1 (D. Colo. June 6, 2020) ("[A] person subject to removal is in custody for habeas purposes.").

The writ of habeas corpus is designed to challenge "the fact or duration" of a person's confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). "In other words, habeas corpus, and thus § 2241, offers detainees release from custody when the very fact that they are detained, or detained for a certain length of time, is unlawful." *Codner v. Choate*, No. 20-cv-01050-PAB, 2020 WL 2769938, at *4 (D. Colo. May 27, 2020).

### B.     Post-Removal Detention Under § 1231

Two sections of the Immigration and Nationalization Act ("INA") authorize detention—8 U.S.C. § 1226, which concerns noncitizens who are not yet subject to a removal order, and 8 U.S.C. § 1231, which operates in the post-removal context.

Petitioner is detained pursuant to § 1231. Under § 1231, "when a [noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." § 1231(a)(1). The noncitizen must be detained during this initial 90-day timeframe, see § 1231(a)(2), which is "referred to as the 'removal period,' " § 1231(a)(1)(A). If the noncitizen "does not leave or is not removed within the removal period," then he or she is normally subject to supervised release. § 1231(a)(3). However, certain categories of noncitizens who have been ordered removed—including inadmissible or criminal noncitizens, or noncitizens whom the Attorney General has determined are a risk to the community or are unlikely to comply with the removal order— "may be detained beyond the removal period." § 1231(a)(6). The text of the INA does not contain an express limit on the duration a noncitizen may be detained under its authority.

### III.   ANALYSIS

Petitioner makes the following arguments challenging his continued detention and removal: (1) Respondents' revocation of Petitioner's OSUP disregarded the unified regulatory scheme and is unlawful under *Accardi*; (2) Respondents deprived Petitioner of liberty without the process the Fifth Amendment requires; (3) because removal is legally foreclosed and respondents have not made the findings required by 8 C.F.R. § 241.13(i), continued detention is unauthorized under *Zadvydas* and § 1231(a)(6); (4) where detention no longer serves a legitimate nonpunitive objective, substantive due process forbids continued imprisonment; and (5) Respondent's actions are arbitrary and capricious under the APA.

### A. Respondents' Revocation of Petitioner's OSUP Under *Accardi*

Petitioner argues that under the *Accardi* doctrine, an agency must follow its binding rules and procedures and courts must set aside agency action taken in derogation of those rules. ECF No. 1 ¶ 30 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). ICE failed to follow DHS's own regulation when Petitioner was not given pre-revocation notice, written reasons for revocation, and an informal interview. *Id.* ¶ 42. Petitioner contends that "[d]etention predicated upon an unlawful revocation is itself unlawful. *Id.* ¶ 43. The Court agrees.

At the time his Petition was filed, Petitioner had not received notice or an opportunity to be heard on the revocation. Since then, Respondents state that ICE served Petitioner with a Notice of Revocation of Release on February 24, 2026. ECF No. 14-1 ¶ 42. Under 8 C.F.R. § 241.1(l)(1), "[a]ny alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody." The regulation clearly states "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.1(l)(1).

Here, Petitioner was notified of the reasons for revocation on February 24, 2026, well after his order of supervision was revoked on November 24, 2025. Pursuant to 8 C.F.R. § 241.1(l)(1), Petitioner should have been notified of the reasons for revocation "upon revocation." Additionally, the regulation requires an "initial informal interview

6

promptly after" his return to custody to afford him "an opportunity to respond to the reasons for revocation." Petitioner was not given his mandatory informal interview to respond to the reasons for revocation. Respondents contend that Petitioner has not shown any procedural violation and, even if there was some deviation from procedures set forth in 8 C.F.R. § 241.4(l)(2), that deviation does not amount to a due process violation. ECF No. 14 at 13. Then, Respondents assert "the proper remedy for denial of procedural due process would be the proper process, not immediate release." *Id.* The Court disagrees. "At bottom, because ICE violated its own regulations when it detained Petitioner without notifying him of the reasons why he was being detained, Petitioner is entitled to habeas relief." *Sanchez v. Bondi*, No. 1:25-CV-02287-CNS, 2025 WL 3484756, at *2 (D. Colo. Dec. 4, 2025) (quoting *Roble v. Bondi*, Case No. 25–cv–3196 (LMP/LIB), ––– F. Supp. 3d –––, 2025 WL 2443453, at *3 (D. Minn. Aug. 25, 2025)). Thus, the Court agrees with Petitioner's argument that his detention is unlawful under the *Accardi* doctrine.

### B.   Petitioner's Fifth Amendment Due Process Rights

Next, Petitioner argues that, by failing to follow its own procedures when revoking his OSUP and taking Petitioner "into custody without advance notice, without stating the grounds, without affording any prompt interview required by regulation, and without any hearing before a neutral decisionmaker." ECF No. 1 ¶ 46. As described above, the Court agrees that Petitioner was not afforded his due process rights as outlined in DHS's own regulation when his OSUP was revoked.

7

### C.      Petitioner's Continued Detention Under *Zadvydas* and § 1231(a)(6)

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) "does not permit indefinite detention," although the statute does not specify a time limit on how long the DHS may detain a noncitizen in the post-removal period. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Rather, "in light of the Constitution's demands," a noncitizen may be detained only for "a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Id.*; *accord Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022). The Supreme Court reasoned that "Congress previously doubted the constitutionality of detention for more than six months" and recognized six months as presumptively reasonable. *Zadvydas*, 533 U.S. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence to rebut that showing." *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Here, Petitioner was detained for 881 days between 2017 and 2020, before he was released on OSUP. He was then re-detained on November 24, 2025 and remains in detention. Thus, Petitioner contends he has been detained well beyond six months. Respondents do not address Petitioner's argument that the six-month period is cumulative and does not reset through cycles of release and re-detention. Instead, Respondents simply argue that Petitioner's detention has not exceeded six months, considering only his most recent re-detention. ECF No. 14 at 9. The Tenth Circuit has not

8

addressed whether non-consecutive detentions are cumulative with respect to the *Zadvydas* six-month clock. However, this Court agrees with the approach taken by other district courts. '[U]nder the reasoning of *Zadvydas*, a series of releases and re-detentions by the government while technically not in violation of the presumptively reasonable jurisprudential six month removal period, in essence results in an indefinite period of detention, albeit executed in successive six month intervals." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 722 (W.D. Wash. 2025) (quoting *Chen v. Holder*, No. CV 6:14-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015)). Therefore, the Court concludes that Petitioner's detention is not presumptively reasonable under *Zadvydas*.

Respondents state that they provided Petitioner with a Post Order Custody Review on February 7, 2026 to determine that he did not satisfy the criteria for release and that there is a significant likelihood of removal in the reasonably foreseeable future. ECF No. 14-1 ¶ 41. This review relates to the detention and removal of Petitioner. 8 C.F.R. § 241.13 ("Determination of whether there is a significant likelihood of removing a detained alien in the reasonably foreseeable future."). "This section establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). As explained above, Petitioner was not provided the custody review procedures outlined in

9

§ 241.4. Because Petitioner is unlawfully detained under § 241.4, the Post Order Custody Review conducted under § 241.13 does not remedy his unlawful detention.

Finally, Petitioner asserts that the *Menocal* writ forecloses his removal and undermines any claim that detention serves § 1231's civil purpose. ECF No. 1 at 16. The Court agrees. The Writ issued on December 8, 2025 clearly states "I hereby command that you produce the material witness, detainee Hugo Hernandez Ceren, A-073-956-722, and not remove him from the United States until the need for his live trial testimony in this case has resolved, i.e., when the trial in this matter has concluded or, if no trial is held, when the case has been terminated prior to effectuating his removal from the United States to El Salvador." *Alejandro Menocal et al. v. The GEO Group, Inc.*, No. 1:14-cv-02887 (D. Colo.), ECF No. 437 at 1. Trial in the *Menocal* case has not concluded nor has the case been terminated. Therefore, Petitioner may not be removed on this basis alone.

Accordingly, the Court grants the Petition.[1]

## IV.   CONCLUSION

For the reasons stated above, it is ORDERED that Mr. Hernandez Ceren's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1, is GRANTED. Respondents are ORDERED to immediately release Petitioner subject to the terms of his Order of Supervision. Respondents shall file a status report within **two days** of this Court's order to certify compliance as to Mr. Hernandez Ceren's release. Respondents are FURTHER ORDERED that Mr. Hernandez Ceren shall not be removed from the United

---

[1] Given the Court's analysis of Petitioner's first three arguments, the Court need not address Petitioner's remaining arguments.

States prior to the discharge of the *Menocal* Writ of Habeas Corpus Ad Testificandum (No. 1:14-cv-02887 (D. Colo.), ECF No. 437).

DATED: March 12, 2026

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge